UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NATHANIEL BIKLEN,

              Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

              Defendant.

Case No. 3:17-cv-06070-BAT

**ORDER AFFIRMING AND DISMISSING WITH PREJUDICE**

Nathaniel Biklen appeals the decision of the Administrative Law Judge (ALJ) finding him not disabled. Plaintiff contends the ALJ erred in failing to consider limitations arising from Klinefelter's Syndrome and that this error impacted the weight given to the medical opinion evidence and to Plaintiff's allegations concerning the severity of his impairments. Dkt. 10. Plaintiff seeks remand for further proceedings. *Id.* As discussed below, the ALJ did not err and her decision is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the decision and **DISMISSES** the case with prejudice.

## BACKGROUND

On November 30, 2012, Plaintiff protectively filed an application for Supplemental Security Income, alleging disability beginning June 2, 1980. Tr. 200-01. The claim was denied initially on May 17, 2013 and upon reconsideration on January 22, 2014. Tr. 140-42, 147-48. Plaintiff testified at an initial hearing on August 26, 2015. The hearing was continued to allow

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 1

Plaintiff to obtain representation and additional medical documentation. Plaintiff appeared with a non-attorney representative and testified at a supplemental hearing on June 23, 2016. Patricia B. Ayerza, a vocational expert, also testified. Tr. 58-108. On September 28, 2016, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. 17-34. On October 26, 2017, the Appeals Council denied review. Tr. 1-4.

Utilizing the five-step disability evaluation process (20 C.F.R. §§ 404.1520, 416.920), the ALJ found, at steps one through three, that Plaintiff has not engaged in substantial gainful activity since November 30, 2012 and Plaintiff has the severe impairment of bipolar disorder. Tr. 22. The ALJ acknowledged Plaintiff was born with Klinefelter syndrome,[1] but determined the condition does not constitute a severe medically determinable impairment. *Id.* The ALJ concluded Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments (20 C.F.R. Part 404, Subpart P. Appendix 1). *Id.*

Prior to completing step four, the ALJ found Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels with the following non-exertional limitations: he is able to remember, understand and carry out tasks or instructions consistent with a specific vocational preparation (SVP) rating of 1 or 2; he would do best only having occasional interaction with the general public, such as brief meetings, but not in depth conversations such as mediations or negotiation type tasks; and he may interact with coworkers, but he should not

---

[1] Klinefelter syndrome is a genetic condition that results when a boy is born with an extra copy of the X chromosome. Retrieved from internet at: https://www.mayoclinic.org/diseases-conditions/klinefelter-syndrome/ symptoms-causes/syc-20353949; *See also* Dkt. 10 at 2-3, Plaintiff's Brief citing articles which describe generally, deficits that people with Klinefelter syndrome may experience.

perform tasks requiring teamwork. Tr. 24. As Plaintiff has no past relevant work, the ALJ proceeded to step five, where he relied on the testimony of the vocational expert, in concluding Plaintiff would be able to perform the requirements of occupations such as janitor, hand packager, and laundry worker. Tr. 33.

**DISCUSSION**

**A.    The ALJ Did Not Err At Step Two**

Plaintiff asserts that the ALJ erred in finding that his Klinefelter syndrome was not a severe impairment (Dkt. 10 at 2-4), but concedes that the error was "not, in itself harmful." *Id.* at 4. Rather, Plaintiff contends that the harm occurred when the ALJ failed to consider the effect of symptoms attributable to his Klinefelter's syndrome – particularly the psychological or cognitive symptoms – when she evaluated the medical evidence, Plaintiff's testimony, and lay witness testimony. Dkts. 10 and 16. Accordingly, no harmful error occurred at step two.

**B.    The ALJ Did Not Err in Weighing the Medical Evidence**

To reject the uncontroverted opinion of a treating or examining physician, an ALJ must articulate "clear and convincing" reasons for so doing. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)). If a treating or examining physician's opinion is in conflict with substantial medical evidence or with another physician's opinion, however, it may be rejected for merely "specific and legitimate reasons." *Id.*

    1)    <u>Lawrence Moore, Ph.D., Examining Psychologist</u>

Plaintiff contends the ALJ erred when she discounted the opinion of Dr. Moore as Dr. Moore was the only medical provider who considered the impact of his Klinefelter's syndrome on his cognitive functioning. In May 2016, Dr. Moore diagnosed Plaintiff with major neurocognitive disorder with features of executive dysfunction and bipolar disorder most recent

episode manic. Dr. Moore interviewed Plaintiff and administered psychological testing on which Plaintiff generally scored in the average to low-average range. Tr. 825-826. Dr. Moore acknowledged that this objective testing generally failed to reveal cognitive or psychological functioning deficits, but suggested his observations during the examination along with Plaintiff's history revealed a "clear picture of executive dysfunction that is manifested through cognitive, behavioral, and social deficits" that undermined Plaintiff's employment prospects. Tr. 827, 831. Dr. Moore did not articulate specific limitations or offer an opinion as to what Plaintiff was capable of doing despite any limitations. Tr. 815-31.

Based on his observations of Plaintiff during his examination, Dr. Moore opined that Plaintiff's primary cognitive difficulties are linked to a significant executive dysfunction. From a cognitive standpoint, he noted Plaintiff was notably disorganized, showed deficits in decision making and demonstrated an extremely slow pace. From a behavioral standpoint, he noted Plaintiff exhibited prominent disinhibition, did not manage well with lack of structure, and demonstrated inappropriate behaviors. From a social standpoint, he noted Plaintiff was socially immature and had a profound lack of insight regarding his deficits. Dr. Moore opined that even with a strong treatment team and regular psychotherapy and taking psychoactive medications, Plaintiff may continue to demonstrate underlying executive dysfunction that interferes with his ability to maintain a fully independent lifestyle and be competitive in the work environment and suggested Plaintiff consider disability compensation and/or vocational rehabilitation services. Tr. 827-831.

Dr. Moore opined that Plaintiff's significant executive dysfunction is "*possibly* related to Klinefelter syndrome," as some research suggests that executive dysfunction and learning disabilities are potentially linked to this condition. Tr. 827 (emphasis added). However, he also

noted that Plaintiff has a history of repeated head injuries and Vitamin D deficiency that could clearly exacerbate, lower the threshold for the expression of cognitive deficits, or contribute to his cognitive difficulties. *Id.* Another area identified by Dr. Moore as being possibly related to Plaintiff's Klinefelter syndrome is Plaintiff's fluctuating testosterone levels, which have also been correlated with mood difficulties. However, Dr. Moore also notes "psychiatric functioning has also emerged as a significant factor in this individual's overall situation even separate from testosterone fluctuations and substance abuse" and while Plaintiff's "psychiatric condition [is] to some extent related to testosterone and has historically been exacerbated by substance use" it also "appears to reflect a primary underlying mood disorder with psychotic features." Tr. 828.

The ALJ assigned limited weight to Dr. Moore's opinion because (1) Dr. Moore did not have access to Plaintiff's treatment records (including his psychiatric admission in January 2013 or Dr. Cohn's evaluation report) and therefore, his opinions were primarily based on testing and observing Plaintiff at the time of his evaluation; and (2) there were significant differences in how Plaintiff presented to Dr. Moore with how he presented to Dr. Alvord in December 2015 and to his treatment providers. Tr. 32 (citing Exhibit 13F). The ALJ did not err in deciding to give little weight to Dr. Moore's opinions.

Dr. Moore acknowledged he had an incomplete diagnostic history of Plaintiff: "Unfortunately, the only records available for review are old records that reflect academic interventions when he was young and a single psychological evaluation from December 2015." Tr. 817. In addition, Dr. Moore's evaluation of Plaintiff occurred less than two weeks after Plaintiff sought treatment for a manic episode where he had not slept well for ten days. Tr. 705. At that time, Plaintiff indicated he was not taking his medications (Tr. 705) and he continued to smoke marijuana and drink alcohol (Tr. 706). Dr. Moore acknowledged and opined that

Plaintiff's substance use "has confounded the overall clinical picture." Tr. 828.

The ALJ also noted that had Dr. Moore evaluated Plaintiff at a different time, "it is likely [Plaintiff's] presentation would have been more consistent with his usual presentation as reflected in the rest of the record of evidence." Tr. 32. Plaintiff argues that such a conclusion is based merely on conjecture, but here the ALJ was not merely conjecturing; rather, she was relying on Plaintiff's "medical history [, which] shows that there is usually a significant period of time between these episodes and they are generally of short duration after he takes his medication and sleeps." For this reason, the ALJ gave more weight to Dr. Alvord's opinions as "his observations are more consistent with Dr. Cohn's evaluation and most of the other medical examinations in the record that reflect the claimant's typical presentation…." Tr. 32.

The ALJ did not err in discounting Dr. Moore's opinion because it was based on an incomplete diagnostic picture of Plaintiff's conditions. An ALJ may reject an opinion that is inconsistent with the medical record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). An ALJ may also reject an opinion that is based on a poor diagnostic picture of the claimant. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (upholding ALJ's rejection of examining physician's contradicted opinion because, inter alia, it "was predicated in part on her erroneous belief that Chaudhry's wheelchair and cane were prescribed" and because "[t]he ALJ's conclusion was supported by the observations of many of the providers who evaluated Chaudhry.").

The ALJ also noted significant differences in how Plaintiff presented to Dr. Moore and how Plaintiff presented to other providers. Tr. 32. An opinion's consistency with the record as a whole is an important factor when considering what weight to give the opinion. 20 C.F.R. § 416.927(c)(4). Dr. Moore described Plaintiff as someone who exhibited pervasive executive

dysfunction that affected his cognitive, behavioral, and social abilities to a significant degree. Tr. 828. Conversely, treatment notes consistently suggested only mild to moderate deficits. Tr. 465, 486, 490 (GAF Score: 60); Tr. 499 (GAF Score: 70); Tr. 501 (GAF Score: 70); Tr. 505-06 (GAF Score: 70); Tr. 508, 510, 610, 640-41, 643-44, 808-09.[2]

Furthermore, Dr. Moore's narrative was inconsistent with the opinions and examination findings of at least two other psychologists who examined Plaintiff (Michael Cohn, Ph.D., in March 2013 and Scott Alvord, Psy.D., in December 2015). Tr. 32. Dr. Cohn noted that despite some tangential thought processes, Plaintiff appeared "coherent and organized" and exhibited no deficits. Tr. 548-553. Similarly, Dr. Alvord found that Plaintiff functioned within normal neurocognitive limits. Tr. 696. He opined that Plaintiff would have only mild to moderate difficulties attending work regularly, completing a normal workweek, and performing work activities on a consistent basis without additional accommodations. Tr. 696-97. And he opined that Plaintiff would have no difficulty performing even detailed and complex tasks. Tr. 696-97. Dr. Cohn's and Dr. Alvord's opinions were both supported by objective testing showing that Plaintiff generally functioned within the average to low average range. Tr. 549-52, 694-96.

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Commissioner*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003); *see also Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) ("When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict.") (quoting *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.

---

[2] A GAF score of 60 reflects moderate symptoms or moderate difficulty in social, occupational, or school functioning and a GAF score of 70 suggests some mild symptoms or mild difficulty in social, occupational, or school functioning, but indicates the individual is "generally functioning pretty well." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TEXT REVISION, p. 34 (4th ed. 2000) (DSM-IV-TR).

1992)). Because the ALJ gave legally valid justifications for the weight he assigned to Dr. Moore's opinion and substantial evidence supports the ALJ's reasoning, the ALJ did not err in discounting Dr. Moore's opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (even where "evidence exists to support more than one rational interpretation, [the court] must defer to the Commissioner's decision.").

2) <u>Dr. Alvord, Examining Psychologist</u>

Dr. Alvord examined Plaintiff in December 2015. He conducted a psychological examination that included objective testing, a clinical interview, mental status examination, and review of records, including Plaintiff's prior psychological evaluation. Tr. 691-97. At that time, Plaintiff presented with no psychiatric distress or apparent anomalies; his thought processes were intact and his speech was within normal limits; his long term and short term and immediate memories were all intact, and his attention and concentration were within normal limitations. Tr. 31. Dr. Alvord diagnosed Plaintiff with bipolar affective disorder, narcissistic personality traits, and a history of alcohol and cannabis abuse. *Id.* Dr. Alvord concluded Plaintiff would have no difficulties performing detailed and complex tasks or interacting with supervisors, co-workers, or the public. Tr. 697. He endorsed only mild to moderate limitations in Plaintiff's ability to consistently perform work activities, maintain regular attendance, complete a normal workday/workweek without interruption, or deal with usual workplace stress. Tr. 697.

Plaintiff argues that the ALJ erred in giving great weight to Dr. Alvord's opinions because Dr. Alvord, unlike Dr. Moore, failed to speculate about whether the mental limitations he observed were caused by Plaintiff's Klinefelter's syndrome. Plaintiff fails to establish that the ALJ erred by giving weight to Dr. Alvord's opinion. In addition, Dr. Alvord, like Dr. Moore, noted the difficulties of determining the effect of Plaintiff's Klinefelter's syndrome vis-à-vis his

bipolar disorder and mood cycling. When questioned about his long-term symptoms, Plaintiff described most, if not all, diagnostic criteria of Bipolar Disorder and Dr. Alvord noted that the symptoms are "somewhat confounded by hypogonadism related to Klinefelter's syndrome" for which Plaintiff takes testosterone – Plaintiff describes mood cycling which occurs after he takes his testosterone shots and when the shots "start to wear off." Plaintiff also described the testosterone as primarily increasing his energy and motivation. Dr. Alvord noted this is "somewhat of a confound given the fact that similar symptoms can be expected with a cyclical mood disorder." Tr. 693. Similarly, Dr. Alvord noted "it is somewhat difficult to truly clarify the nature of his mood cycling given Klinefelter's" when considering Plaintiff's descriptions of manic episodes where he is less energetic and has difficulty getting out of bed. *Id.* He also noted that it appeared Plaintiff had not received adequate treatment for this condition and opined that more intensive psychiatric care would improve his functioning dramatically, but that neurocognitively, Plaintiff is functioning within normal limits. Tr. 696.

Dr. Alvord's consideration of Plaintiff's Klinefelter's syndrome does not appear to be markedly different from that of Dr. Moore's. Dr. Moore also acknowledged Plaintiff's mood difficulties, which are related to Plaintiff's fluctuating testosterone levels, but ultimately concluded that Plaintiff suffers from an underlying mood disorder with psychotic features separate from testosterone fluctuations and substance abuse. Tr. 828.

The Court finds that the ALJ's interpretation of Dr. Alvord's assessment and impressions of Plaintiff's limitations was reasonable and supported by substantial evidence. Accordingly, the ALJ's decision to give great weight to Dr. Alvord's opinion shall be upheld.

//

//

## C. The ALJ Did Not Err in Weighing Plaintiff's Allegations

Newly revised Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *13, provides guidance on how adjudicators should evaluate a claimant's statements. SSR 16-3p is applicable to the ALJ's decision issued September 28, 2016, as adjudicators will apply SSR 16-3p in making decisions on or after March 28, 2016. 82 Fed. Reg. 49, 468. SSR 16-3p eliminates the use of the term "credibility" and instead focuses on an evidence-based analysis of the administrative record to determine whether the nature, intensity, frequency, or severity of an individual's symptoms impact his or her ability to work. SSR 16-3p does not, however, alter the standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony. To reject subjective complaints, an ALJ must provide "specific, cogent reasons" and, absent affirmative evidence of malingering, must reject a claimant's testimony for "clear and convincing" reasons. *Morgan v. Commissioner of SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *see Carmickle v. Commissioner*, SSA, 533 F.3d 1155, 1160 n.1 (9th Cir. 2008) (rejecting proposition that there must be a specific finding of malingering; rather, it is sufficient that there be affirmative evidence suggesting malingering.

Plaintiff testified he has significant cognitive impairments, poor concentration and memory. He stated he gets scattered because he has so many talents and interests, he is easily distracted and forgetful, it takes him a long time to do normal tasks, and he has difficulty following instructions because he hears things wrong or confuses things that he has read and then he does things the wrong way. He also feels people get frustrated with him, he does not have good organizational skills, and he gets overwhelmed by stress. When he is manic he has fast speech, he cannot really finish or get to a conclusion or answer a question, he gets long

winded, he has a hard time concentrating and he has a hard time staying seated. When he is depressed, he will stay in bed and sleep, sometimes for a week at a time. Tr. 25.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found that his statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with Plaintiff's daily activities, his failure to follow treatment recommendations, and the objective medical findings. Tr. 25-28.

An ALJ may discount a claimant's testimony if it is inconsistent with the claimant's daily activities, or if the claimant's participation in everyday activities indicates capacities that are transferrable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

Here, the ALJ noted that Plaintiff described daily activities are inconsistent with his complaints of disabling symptoms and limitations, as the activities he describes show that he is active and independent despite his mental impairment. Tr. 23-24, 28. The ALJ further noted that Plaintiff's described daily activities support the psychological testing, which shows that he is generally cognitively intact and is able to complete simple and some complex tasks. Tr. 28. For example, Plaintiff testified that he lives by himself in a rental house, he tends to his personal care needs independently, he prepares his own meals and can prepare really good meals when he

cooks; he is able to do household chores such as general cleaning, sweeping and laundry; he regularly does yard work including mowing the lawn, weeding, composting, trimming hedges, and planting and tending a vegetable garden. He performs projects around the house including sanding and painting a bedroom. Plaintiff has a driver's license and is able to drive and he is involved in several activities and hobbies such as hiking, biking, kayaking, meditating, and doing yoga. *Id.* As to social functioning, the ALJ noted Plaintiff has moderate difficulties but he has friends and is close to his parents and is also able to go out independently, use public transportation, and attend appointments independently. He has a girlfriend and has had girlfriends in the past. He goes out to a yoga center, the park, to a rock climbing gym, and bars by himself. Tr. 28.

With regard to concentration, persistence or pace, the ALJ noted Plaintiff has moderate difficulties but noted Plaintiff's hobbies require capabilities in these areas of functioning; specifically, he paints, routinely produces art and has had art openings; he also learns to play and make different flutes, practices perfecting magic tricks, and does yoga. Plaintiff reported being able to play video games for several hours at a time. Tr. 23-24. Plaintiff also reads, uses a computer and watches television and movies, and cares for his two cats. Tr. 28.

In short, the ALJ reasonably found Plaintiff's activities as whole were inconsistent with the level of debilitating symptoms that Plaintiff alleged. The ALJ also noted significant inconsistencies between Plaintiff's alleged symptoms of his mental impairments preventing him from working "and the minimal objective medical findings." Tr. 25. Inconsistency between a claimant's symptom allegations and the medical evidence is a clear and convincing reason to reject a claimant's credibility. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Although Plaintiff alleged cognitive issues and learning disorders, the ALJ noted that these are not evident

in the record and instead, the record showed that Plaintiff has been observed to have normal intelligence and no memory deficits. Tr. 25 (citing Exhibits 4F, 11F, 19F) (neurocognitive testing showing functions in the average to low average range). While acknowledging that Plaintiff "had accommodations in school," the ALJ also noted that Plaintiff was able to obtain a regular high school diploma and a Bachelors of Arts degree in visual art with a minor in traditional Eastern art. Tr. 25. It was not unreasonable for the ALJ to note that Plaintiff's academic achievement suggests a level of functioning inconsistent with claims of debilitating cognitive impairments.

The ALJ also discounted Plaintiff's symptoms allegations because Plaintiff did not follow treatment recommendations. A treatment's effectiveness is relevant to determining the severity of a claimant's symptoms, and an ALJ may rely on evidence of effective treatment in making a negative credibility finding. 20 C.F.R. § 404.1529(c)(3)(iv)-(v); *Tommasetti v. Astrue*, 533 F3d 1035, 1040 (9th Cir. 2008). The ALJ noted that although there are some reports in the record of "episodes of tangential thoughts, paranoia and grandiosity, these episodes are fairly few, are of short duration, and there is a significant amount of time between episodes." Further, the ALJ noted:

> …most of these episodes of increased symptoms appear to have been at the same time as an increase of substance use, lack of sleep, and not taking prescribed medications. With the use of medications and sleep, the claimant appears quickly to stabilize. Notably, the claimant regularly does not take his psychiatric medications as prescribed despite admitting he responds well and feels better on them. He also has admitted being inconsistent with taking his testosterone, which the claimant reported if he uses on time, considerably helps his energy, fatigue, manic episodes, executive function, concentration and ability to organize.

Tr. 25.

Plaintiff admitted that taking testosterone supplements for his Klinefelter syndrome improved his fatigue, manic episodes, and alleged symptoms of decreased focus, executive

ORDER AFFIRMING AND DISMISSING WITH
PREJUDICE - 13

functioning, concentration, and organization. Tr. 309, 681. Plaintiff's providers confirmed his testosterone treatment was effective. Tr. 555. Yet Plaintiff admitted he was often late in taking his supplements. Tr. 681. Providers also noted that Plaintiff's mental health improved when he took his medication and refrained from using drugs and alcohol as recommended. For instance, in November 2012, Plaintiff's psychiatrist noted that Plaintiff's mental health symptoms reportedly improved when taking his medications. Tr. 401. In early January 2013, although Plaintiff was using his medication only intermittently, his psychiatrist remarked that Plaintiff's mood stabilized quickly even with a small, inconsistent dose of mood stabilizer. Tr. 510. In March 2013, Plaintiff denied current alcohol and drug use and endorsed no difficulty in completing activities of daily living. Tr. 547. His examining psychologist reported no functional concerns. Tr. 553. In November 2014, Plaintiff reported that his medication (Abilify) was helpful. Tr. 643. His mental health provider noted on his mental status exam that Plaintiff denied difficulty functioning and that he was doing "pretty good." Tr. 643-44. The provider even encouraged Plaintiff to pursue work. Tr. 643.

Records showed that Plaintiff did not want to take medication and often took his psychotropic medications sporadically, only when he felt he needed them (Tr. 488, 503, 508, 594, 634, 637, 643, 705, 819-20). And despite recommendations to refrain from using drugs and alcohol, which negatively impacted his mood, sleep, and manic episodes (Tr. 483, 510, 596 637), Plaintiff continued to use these substances (Tr. 595) (Plaintiff occasionally used ecstasy and continued to drink intermittently and use marijuana); Tr. 632 (ongoing alcohol and marijuana use); *accord* Tr. 682, 818, 848.

Plaintiff suggests that his behavioral deficits, including his refusal to take medications regularly and continued use of drugs and alcohol against the recommendations of his medical

providers "were directly attributable to Plaintiff's Klinefelter's syndrome." He cites to articles describing deficits that people with Klinefelter syndrome may experience, including difficulty with judgment and decision (Dkt. 10 at 2-3), but offers no credible evidence establishing that this condition prevented him from following treatment recommendations. A claimant must offer medical evidence that the failure to seek or follow treatment was attributable to claimant's mental impairment rather than his personal preference. *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012). Instead, Plaintiff relies solely on Dr. Moore's opinion (Dkt. 10 at 11, citing Tr. 828-29), which as discussed above, was appropriately discounted by the ALJ. Moreover, while Dr. Moore opined that Plaintiff's executive dysfunction diagnosis may possibly be related to his Klinefelter's syndrome, he offered no opinion on whether Plaintiff's refusal to take medications regularly or continued use of drugs and alcohol can be directly attributed to Plaintiff's Klinefelter's syndrome.

The record here showed that Plaintiff functioned well when following treatment recommendations and the ALJ reasonably found that Plaintiff's choice to take his medications sporadically and to continue using drugs and alcohol undermined the credibility of his allegations. Even if the ALJ erred in relying on this reason for discounting Plaintiff's testimony, the error would be harmless, as the ALJ relied on other non-erroneous reasons to discount Plaintiff's credibility. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason among other reasons to discount a claimant's credibility does not negate the validity of the overall credibility determination and is at most harmless error where an ALJ provides other reasons that are supported by substantial evidence).

Finally, the ALJ found inconsistencies between the claimant's alleged mental health symptoms and objective medical findings. Although an ALJ may not reject a claimant's

allegations solely because they are not corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, in contrast to Plaintiff's claim that he suffered significant cognitive impairments including poor memory, poor concentration, and poor organizational skills (Tr. 97-98, 109, 113, 121), Plaintiff generally performed in the average to low average range on psychological tests measuring executive functioning and memory (Tr. 550-51, 694-696, 824-26). Testing suggested that he would have no difficulty performing even detailed and complex tasks (Tr. 696-97). The ALJ appropriately weighed the objective medical findings suggesting Plaintiff retained substantial mental function along with her other valid reasons when deciding to discount Plaintiff's allegations of debilitating symptoms.

The Court finds that these were all legally sufficient reasons on which the ALJ could properly rely to support an adverse credibility determination because an ALJ may base an adverse credibility determination on evidence of improvement or fair response from treatment. The Court therefore defers to the ALJ's credibility determination. *See Lasich v. Astrue*, 252 Fed.Appx. 823, 825 (9th Cir. 2007) (court will defer to Administration's credibility determination when the proper process is used and proper reasons for the decision are provided); *accord Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995).

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** this case with prejudice.

DATED this 10th day of July, 2018.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge